

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CHRISTY MURRAY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 4040 |
| | ) | |
| HSBC AUTO FINANCE, INC., | ) | |
| | ) | Wayne R. Andersen |
| Defendant. | ) | District Judge |

## MEMORANDUM, OPINION AND ORDER

This case is before this court on the parties' cross-motions for summary judgment. This

matter arises out of a claim for damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681

*et seq.* For the following reasons, defendant HSBC Auto Finance, Inc.'s motion for summary

judgment is granted. Plaintiff's Christy Murray's cross-motion for summary judgment is denied.

## BACKGROUND

In June 2005, plaintiff Christy Murray received a mailer from defendant HSBC Auto

Finance, Inc. ("HSBC") telling her she had been pre-selected for an opportunity to refinance her

automobile loan. To determine whether Murray, and others like her, could receive such an offer,

HSBC relied on information from Murray's credit report to determine her initial eligibility.

Murray's allegation that HSBC accessed her credit information in violation of the Fair Credit

Reporting Act ("FCRA") forms the basis of this lawsuit.

HSBC is engaged in the business of entering into or acquiring automobile loans. As part of

its operation, HSBC developed a list of credit criteria that consumers must meet in order to receive

a credit offer. Under a process called pre-screening, HSBC Auto provides this criteria to a credit

bureau, which creates a list from its files of consumers who meet that criteria. HSBC then sends a

mailer offering credit to each person on the list provided by the credit bureau. (Def's. 56.1 Stat., ¶¶

4-6, 8-9)

The mailer Murray received contained the following statements:

- **You Earned It!** Because you've done an outstanding job managing your credit, **you've been Pre-Selected\*\*** for this offer to refinance your auto loan with HSBC.

- **Take Control of Your Payments!** When you refinance with HSBC, you may be able to **lower your interest rate and lower your car payment amount**. That means you'll have more money to save or spend as you wish ... dine out, go shopping, buy tickets to the game, pay other bills and more. The list is endless!

- **Skip Your Next Car Payment!\*\*** When you refinance today, you may be able to take a month off from making your next car payment. Once you apply, ask if you can skip your next car payment.

- **Apply Today!** Get your free no-obligation quote in just minutes ...

(Pl's. Ex. 1) (emphasis in original) The asterisks referred Murray to the reverse side of the mailer. There, the mailer told Murray that "Skip Your Next Car Payment!" meant that Murray's next payment would not be due until between 30 and 75 days after the most recent monthly due date of her existing loan. (*Id.*) The back of the mailer also told Murray, under the heading "Pre-Selected Offers", that she had the right to prohibit use of information contained her credit report. (*Id.*)

HSBC's mailer contained few specific details about the loan Murray might be offered. The mailer told Murray that she might be able to reduce her rate as much as 5.04 percent. (Pl's. Ex. 1) That figure represented the average rate reduction obtained by consumers who accepted HSBC's offer. (Def's. 56.1 Stat., ¶ 21) Furthermore, in small print on the bottom of the front side of the mailer, HSBC provided an example of the possible savings when a debtor refinanced a $20,000,

five-year loan after four months. (Pl's Ex. 1) However, in the same paragraph, HSBC stated, "Your rate and terms may vary." (*Id.*) The reverse side of the mailer informed Murray that the minimum amount of the loan would be $5,000, and stated that loans would not be made if, among other things, her vehicle was built before a certain year, if it had more than 80,000 miles, if it was an "exotic sports car" or "conversion van." (*Id.*) In a separate paragraph, but in equally small print, the mailer stated that HSBC would not extend Murray credit if several conditions were not met, including if she failed to furnish adequate collateral failed to meet the selection criteria. (*Id.*)

To obtain the loan, HSBC encouraged Murray to apply and provided a telephone number and a Web address where Murray could obtain a quote. When a consumer responds to the mailer, HSBC obtains information not available from the credit report, including specific information about the consumer's current vehicle and information to determine the consumer's ability to repay a loan, including his or her income. (Def's. 56.1 Stat., ¶ 13) That information is used for two purposes. First, the data is used to determine whether the consumer is eligible for a loan, under the same criteria HSBC first submitted to the credit bureau. Second, the data is used to determine what interest rate will be applied to the loan. (Def's 56.1 Stat., ¶¶ 14-17).

Murray never called HSBC. Instead, she filed this lawsuit under 15 U.S.C. § 1681 *et seq.*, alleging two violations of FCRA, and sought class action certification.

## DISCUSSION

Both HSBC and Murray have moved for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions of fact, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the initial

3

burden of demonstrating an absence of evidence to support the position of the nonmoving party. *See Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The nonmoving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 252 (1986). On cross-motions for summary judgment, the court "considers the merits of each cross-motion separately and draws all reasonable inferences and resolves all factual uncertainties against the party whose motion is under consideration." *Kazenas v. Oracle Corporation's Long Term Disability Plan*, 2004 WL 603468 (N.D.Ill. Mar. 24, 2004) (internal quotations omitted).

## I. HSBC Did Not Violate 15 U.S.C. § 1681n

Murray has brought her claim under 15 U.S.C. § 1681n, which permits private parties to seek actual or statutory damages against "[a]ny person who willfully fails to comply" with FCRA. 15 U.S.C. § 1681n(a). Murray claims that HSBC violated FCRA because it obtained information from her file at a consumer reporting agency without a permissible purpose, in violation of 15 U.S.C. § 1681b. This court concludes that HSBC had a permissible purpose to obtain information from her credit report because HSBC's mailer was a firm offer of credit. Furthermore, Murray has failed to present this court with evidence showing the existence of a genuine issue of material fact with regard to whether HSBC violated Section 1681n willfully.

### A. HSBC Made a Firm Offer of Credit

Congress passed FCRA in order to protect the privacy of consumers. Specifically, FCRA prohibits businesses and other entities from obtaining information from the consumer's credit report if the consumer did not initiate the transaction and if a permissible purpose does not exist. 15 U.S.C. § 1681b. One permissible purpose includes obtaining a credit report for the purpose of making a

4

"firm offer of credit." 15 U.S.C. § 1681b(c)(1)(B)(i). FCRA defines a "firm offer of credit" as "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(l). To determine whether an offer meets this statutory definition, the Seventh Circuit has instructed courts to look at whether any offer has "sufficient value for the consumer to justify the absence of the statutory protection of his privacy." *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 726 (7th Cir. 2004). An offer does not meet the statutory definition of a "firm offer of credit" merely because some amount of credit is guaranteed. *Id.* As the Seventh Circuit has said:

"A definition of 'firm offer of credit' that does not incorporate the concept of value to the consumer upsets the balance Congress carefully struck between a consumer's interest in privacy and the benefit of a firm offer of credit for all those chosen through the pre-screening process. From the consumer's perspective, an offer of credit without value is the equivalent of an advertisement or solicitation."

*Id.* at 726-27.

When determining whether an offer has sufficient value, courts are required to "consider the *entire* offer and the effect of *all* the material conditions that comprise the credit product in question. If, after examining the entire context, the court determines that the offer was a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." *Id.* at 728. The court's inquiry should focus on "what the offeror has done—what terms have been extended, whether they are honored if a consumer accepts." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 955 (7th Cir. 2006). Specifically, courts can consider the amount of credit extended, whether the offer has value, and the other terms of the offer, such as the rate of interest charged, the method of computing interest, and the length of the repayment period. *Cole*, 389 F.3d at 728. Although the Seventh Circuit emphasized that a court should look at "whether the four

5

corners of the offer" satisfy the statutory definition, it has never limited a court's inquiry to the mailer sent to the consumer to notify them of the offer. *GMAC*, 434 F.3d at 956.

Turning to the mailer at issue in this case, this court concludes that the mailer had sufficient value within the context of FCRA to be considered a firm offer of credit. Consumers who received the mailer in Illinois know that they will receive at least a $5,000 loan if they are approved for credit and that they may be able to reduce their interest rate by as much as 5.04 percent. To assist the recipient of the mailer in translating that abstract rate reduction into concrete terms, the mailer lists a sample loan where refinancing saved $2,728.32 over 56 months. Nor is the advertised rate reduction an outlier that represents the best reduction HSBC ever provided. Instead, it represents the average interest rate reduction obtained by all consumers who refinanced their loans with HSBC before the company launched this solicitation campaign. Consumers also are informed, on the reverse side of the mailer, about the circumstances under which they will not be extended credit, including if they failed to furnish adequate collateral to meet the selection criteria. The refinancing may enable consumers to make payments on a timely basis, which would help boost their credit rating. *See Perry v. First Nat'l Bank*, 459 F.3d 816, 825 (7th Cir. 2006) (citing the potential for an improved credit rating as a factor in determining whether an offer of credit has sufficient value). Finally, the 30 to 75-day grace period before the first payment to HSBC is due, pitched as a way to "take a month off from making your next car payment," has value to an ordinary consumer who might want to shift money set aside for a car payment for other purposes. (Ex. 1) Viewed in the aggregate, all of these factors are enough for this court to conclude that mailer Murray received, when viewed in its entire context, had sufficient value to justify the invasion of her privacy.

Murray makes three arguments to support her claim that HSBC's mailer does not constitute a firm offer of credit. First, Murray argues that because HSBC's mailer does not contain the specific

6

amount of credit she might receive, the interest rate, the method of computing interest, and the repayment period, it lacks any material terms and is therefore a mere advertisement or solicitation instead of something of value to the ordinary consumer. However, nothing in the text or legislative history of § 1681n requires HSBC to include the specific terms of the loan. As the Seventh Circuit recently noted, the presence of a precise interest rate and other materials is just one of several factors to take into consideration. *Perry*, 459 F.3d at 824-25. Overall, "the focus of our inquiry is whether the credit solicitation offers value to the consumer." *Id.* at 826. Unlike *Cole* and *Perry*, which involved lines of credit, the credit product at issue in this case is an automobile loan. As the Federal Trade Commission has stated, "Auto credit obviously depends on the purchase of a car, and certain terms such as the precise amount of credit, depend upon the specific car purchased." (Def's. Ex. 4) Moreover, as HSBC argues, by using the word "application" at least three times in the statutory definition of firm offer of credit, 15 U.S.C. § 1681a(l), Congress anticipated that a creditor might ask for additional information to determine the creditworthiness of a consumer before ultimately extending credit. It is hard to determine what specific information HSBC could provide in the mailer regarding the interest rate and loan terms that might be available from a credit report, when the FTC has acknowledged that those terms are contingent on additional information that Murray would have to provide herself.

Nevertheless, Murray urges this court to adopt the reasoning of the court in *Murray v. Sunrise Chevrolet, Inc.*, 2006 WL 2165747 (N.D. Ill. July 31, 2006) (Coar, J.), which involved a question of whether a solicitation for an automobile loan constituted a firm offer of credit. The district court denied the defendants' motion for summary judgment, holding that the mailer was not a firm offer of credit because it contained no terms about the loan and instead directed consumers to call a telephone number and visit a Web site to obtain more information. The facts of this case

7

are quite different from *Sunrise Chevrolet*, however. First, the mailer in *Sunrise Chevrolet* offered no hint about what terms might accompany the loan, aside from the fact that the value of the loan would not exceed $19,500. By contrast, the mailer in this case seeks to give the consumer as much specificity as possible in the context of an offer to refinance a automobile loan by including an average rate reduction and providing a hypothetical loan reduction. Second, the loan in *Sunrise Chevrolet* could only be used to purchase a car at the defendant's dealership, thus making it precisely the "guise for solicitation," *Cole*, 389 F.3d at 728, and "a sham offer used to pitch a product rather than extend credit," *Murray*, 434 F.3d at 955, the Seventh Circuit has determined does not constitute a firm offer of credit. Here, the loan product is an offer to refinance an existing loan. And as this court has previously determined, the mailer has sufficient value when viewed in its entire context to be considered a firm offer of credit.

Second, Murray argues that a sentence in the mailer telling recipients "[y]our rate and terms may vary" deprives the mailer of sufficient value. (Pl's. Ex. 1) In doing so, Murray encourages this court to adopt the judgment of the court in *Kudlicki v. Farragut Financial Corp.*, 2006 WL 927281 (N.D. Ill. Jan. 20, 2006) (Lindberg, J.). In that case, which also involved a question about whether a solicitation to refinance an automobile loan was a firm offer of credit, the district court entered summary judgment against the creditor because the mailer told the consumer that "[r]ates and terms subject to change at any time." *Id.* at *2. The court concluded that sentence represented a sham offer for credit if the applicable rates and terms could change at the company's whim. Murray urges this court to follow that decision, but the terms of the mailer in *Kudlicki* differ from the one at issue in this case. Although the mailer in this case does state "[y]our rate and terms may vary," that sentence appears after the hypothetical loan HSBC used to provide an example of the potential savings a consumer might realize. Unlike the *Kudlicki* mailer, the sentence at issue in this case

8

operates more closely like a disclaimer. Furthermore, HSBC had a pre-determined matrix of loan terms the company used to determine what loan a consumer qualified for upon providing additional data. (Def's. 56.1 Stat., ¶¶ 27-28)

Next, Murray makes much of the fact that out that of the 220 consumers who contacted HSBC, only 20 individuals received credit. From this, Murray infers that "91% were either denied credit or provided with terms so unfavorable to them that they decided not to accept the offer." (Pl.'s Rply. In Supp. Of Its Cross-Mot. for Summ. J. 5). This unsupported assertion is unconvincing for two reasons. First, Murray provides no evidence that many of the consumers who did not receive credit were rejected despite meeting the criteria used during the pre-selection process. Second, to the extent that Murray offers the rate of response as an indicator of the value of the credit offer, Murray "has not demonstrated that this evidence is relevant to our inquiry." *Perry*, 459 F.3d at 826.

Compliance officials will probably not use HSBC's mailer as an example of impeccable FCRA compliance. HSBC could probably improve its mailer by explaining the method by which its interest rates are calculated and by mentioning that interest rates and loan terms are predetermined based on a consumer's vehicle and income level. However, those deficiencies are not sufficient to deprive HSBC's mailer of value when this court considers "the entire credit offer" and "the entire context" in which the offer was made. *Cole*, 389 F.3d at 728. HSBC's mailer constitutes a firm offer of credit as defined by the Fair Credit Reporting Act. Accordingly, HSBC accessed Murray's credit report for a permissible purpose and did not violate Section 1681b.

### B. HSBC Did Not Willfully Violate FCRA

Even if this court assumes that HSBC accessed Murray's credit information for an impermissible purpose, Murray has filed suit under 15 U.S.C. § 1681n, which requires her to show a "willful" violation of FCRA occurred in order to recover actual or statutory damages. "To act

9

willfully, a defendant must knowingly and intentionally violate the Act, and it 'must also be conscious that [its] act impinges on the rights of others.'" *Wantz v. Experian Information Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (quoting *Phillips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002)). Murray has not set forth evidence showing that a genuine issue of material fact exists regarding whether HSBC willfully violated FCRA.

HSBC argues that its extensive compliance procedure indicates that it could not have willfully violated FCRA. Under HSBC's procedures, no pre-screened offer of credit can be mailed without the review and express written approval of a lawyer from the law department and a compliance officer. (Def's. 56.1 Stat., ¶ 36) HSBC also had a written compliance policy regarding pre-screened offers of credit, and employees receive regular mandatory training on FCRA compliance. (Def's. 56.1 Stat., ¶¶ 40-41) During the review process, several changes were suggested and ultimately included in the version of the mailer sent to Murray to ensure FCRA compliance. (Def's 56.1 Stat., ¶ 39) Finally, the mailer Murray received was reviewed by Jim Adams, an attorney with HSBC. (Pl.'s 56.1 Stat., ¶ 33)

Murray attempts to show that HSBC acted willfully in two ways. First, Murray argues that because Adams knew about the Seventh Circuit's *Cole* decision yet approved a mailer she argues failed to meet the requirements of *Cole*, HSBC acted willfully because it assumed the risk that his choice was wrong. FCRA provides actual or statutory damages under Section 1681n for a willful violation, but only actual damages under Section 1681o for a negligent violation. According the Murray, the distinction between a willful and negligent violation would apparently turn on whether the reviewing attorney was aware of the applicable rule. This test is inconsistent with the aforementioned standard of willfulness in the context of FCRA, which requires a defendant to knowingly violate the law and be conscious that its act impinges the rights of others. To support a

10

finding of willfulness, this court concludes that more evidence is needed than an assertion that the reviewing attorney was aware of the applicable FCRA standard.

Second, Murray points to alleged deficiencies in Adams' review. Specifically, Murray argues that Adams only made small edits to the mailer in question and that he did not consult with outside counsel. However, these assertions are insufficient to show the existence of a willful violation. In any event, Adams reviewed the mailer at least twice. After he approved the mailer the first time, the company still made changes in an attempt to ensure FCRA compliance. (Def.'s Add.56.1 Stat., ¶ 6) Moreover, HSBC employs four attorneys to ensure compliance, and Murray cannot identify any reasons why HSBC should consult outside counsel.

Murray contends that she has been unable to show that Adams' review of the mailer was deficient in light of the relevant FCRA case law or determine what advice Adams provided because HSBC did not permit Adams to answer those questions during his deposition. However, as this court ruled on May 12, 2006, HSBC has not waived the protection of the attorney-client privilege and therefore Adams' failure to answer questions related to his review of the mailer is immaterial to this court's analysis of a summary judgment motion.

In conclusion, Murray has failed to show the court that a genuine issue of material fact exists regarding whether HSBC willfully violated FCRA. Murray's allegation of willfulness essentially boils down to a legal argument that, if HSBC violated FCRA, and if the legal and compliance officials were aware of the applicable standard, then she is entitled to summary judgment despite the dearth of evidence showing any hint of willfulness on HSBC's part. This court disagrees. Because Murray offers no other evidence to support her and based on the extensive evidence submitted by HSBC, this court concludes that no reasonably jury could find that HSBC willfully violated FCRA.

11

## II. There is No Private Right of Action For a Violation of 15 U.S.C. § 1681m

Murray also alleges that HSBC violated 15 U.S.C. § 1681m(d). Section 1681m(d) requires companies who use credit report information to send a written solicitation to a consumer to make certain disclosures, such as that information from the consumer's creditor report was used in connection with the transaction and that the consumer has the right to prohibit the use of that credit information from being accessed. 15 U.S.C. § 1681m(d)(1). Those mandatory disclosures must be made in a "clear and conspicuous manner," which means that they shall be presented in "such format and in such type size and manner as to be simple and easy to understand." 15 U.S.C. §§ 1681m(d)(1), 1681m(d)(2)(B). Murray claims that the disclosures in HSBC's mailer were not made clearly and conspicuously.

However, in this case, we need not consider whether HSBC has violated Section 1681m(d). Section 1681m(h)(8) provides that the FCRA sections that create private rights of action "shall not apply to any failure by any person to comply with this section." The Seventh Circuit recently concluded that the words "this section" apply to Section 1681m as a whole. *Perry v. First Nat'l Bank*, 459 F.3d 816, 820 (7th Cir. 2006). "The unambiguous language of § 168m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m." *Id.* at 823. Following the holding in *Perry*, this court concludes that no private right of action exists for a violation of Section 1681m(d). Because Murray cannot recover for a violation of Section 1681m, this court has no need to determine whether HSBC actually violated that section.

## CONCLUSION

For the foregoing reasons, defendant HSBC's motion for summary judgment is granted. Plaintiff Christy Murray's cross-motion for summary judgment is denied. This court enters judgment in favor of the defendant. All other pending motions (# 14) are denied as moot.

## II. There is No Private Right of Action For a Violation of 15 U.S.C. § 1681m

Murray also alleges that HSBC violated 15 U.S.C. § 1681m(d). Section 1681m(d) requires companies who use credit report information to send a written solicitation to a consumer to make certain disclosures, such as that information from the consumer's creditor report was used in connection with the transaction and that the consumer has the right to prohibit the use of that credit information from being accessed. 15 U.S.C. § 1681m(d)(1). Those mandatory disclosures must be made in a "clear and conspicuous manner," which means that they shall be presented in "such format and in such type size and manner as to be simple and easy to understand." 15 U.S.C. §§ 1681m(d)(1), 1681m(d)(2)(B). Murray claims that the disclosures in HSBC's mailer were not made clearly and conspicuously.

However, in this case, we need not consider whether HSBC has violated Section 1681m(d). Section 1681m(h)(8) provides that the FCRA sections that create private rights of action "shall not apply to any failure by any person to comply with this section." The Seventh Circuit recently concluded that the words "this section" apply to Section 1681m as a whole. *Perry v. First Nat'l Bank*, 459 F.3d 816, 820 (7th Cir. 2006). "The unambiguous language of § 168m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m." *Id.* at 823. Following the holding in *Perry*, this court concludes that no private right of action exists for a violation of Section 1681m(d). Because Murray cannot recover for a violation of Section 1681m, this court has no need to determine whether HSBC actually violated that section.

## CONCLUSION

For the foregoing reasons, defendant HSBC's motion for summary judgment is granted. Plaintiff Christy Murray's cross-motion for summary judgment is denied. This court enters judgment in favor of the defendant. All other pending motions (# 14) are denied as moot.

This is a final and appealable order. This case is hereby terminated.

It is so ORDERED.

_____
Wayne R. Andersen
District Judge

Dated: September 27, 2006